**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**SAM BRAXTON,**

**Petitioner,**

**vs.** **Case No. 8:03-CV-2337-T-27TGW**

**JAMES McDONOUGH,**[1]

**Respondent.**

_______________________________/

## ORDER

Petitioner, a State of Florida inmate proceeding *pro se*, initiated this cause of action by filing a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 challenging his 2001 convictions entered in the Thirteenth Judicial Circuit Court, Hillsborough County, Florida[2] (Dkt. 1). Respondent has filed a response to the petition (Dkt. 6). Despite having been afforded three opportunities to do so, Petitioner has not filed a reply to the response, *see* Dkts. 4, 9, and 11. The matter is now before the Court for consideration on the merits. An evidentiary hearing is not required for the disposition of this matter. Rules Governing Section 2254 Cases 8(a).

### Background

On August 9, 2000, Petitioner was arrested following a traffic stop when officers discovered that the car he was driving was not registered. During the ensuing search, officers discovered that Petitioner was in possession of a substance which tested positive

---

[1]The Court takes judicial notice of information available at the Florida Department of Corrections Information Network, http://www.dc.state.fl.us/, viewed March 17, 2007. *See* Fed. R. Evid. 201. Following his convictions in Hillsborough County, Florida, Petitioner was placed in the custody of the Florida Department of Corrections on December 9, 2005. James McDonough, the current Secretary of the Florida Department of Corrections, is substituted as the proper party respondent for Cal Henderson pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

[2] This is Petitioner's second filing of a Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254. Petitioner's first petition was dismissed by the district court for failure to comply with the requirements of Rule 2(c)of the Rules Governing § 2254 Cases and because the petition raised grounds that had not been exhausted in the state courts. (See Case No. 8:03-CV-1888-T-26TBM - Dkt. 3).

for cocaine (Dkt. 7, Ex. 11, Vol. I at R. 9-10). Petitioner was on probation at the time of his arrest. The public defender was appointed to represent Petitioner on August 31, 2000. As relevant to these proceedings, Petitioner was charged on September 1, 2000 by Information with possession of cocaine with intent to sell or deliver (Count I), driving while license suspended (Count II), possession of drug paraphernalia (Count III), and operating an unregistered vehicle (Count IV). *Id.* at R. 11-15. On four occasions, court-appointed counsel was forced to withdraw from his case due to a conflict with Petitioner.

Trial was scheduled to commence on March 19, 2001. On March 7, 2001, the public defender was allowed to withdraw due to a conflict with Petitioner, and Attorney Robert Fraser was appointed as a special public defender to represent him. Within minutes of the appointment, Petitioner discharged Attorney Fraser. Nonetheless, Attorney Fraser appeared with Petitioner on his trial date. Petitioner advised the trial court that he did not want to be represented by Attorney Fraser, explaining that they had a conflict because Attorney Fraser refused to file a speedy trial demand.

Refusing to proceed *pro se*, Petitioner was adamant that he would not waive his speedy trial rights, proposing instead that he be released on his own recognizance ("ROR") so he could seek employment and earn enough money to retain private counsel. Noting that under Florida's speedy trial rule, the State would have to dismiss the charges unless trial commenced as scheduled, the trial court denied Petitioner's ROR request, and following a *Faretta* hearing,[2] the trial commenced with Petitioner proceeding *pro se*,

---

[2]*See Faretta v. California*, 422 U.S. 806 (1975) (A defendant has a constitutional right to defend himself if his waiver of right to counsel is knowing and intelligent).

assisted by newly appointed standby counsel Attorney Brian Gonzalez.[3] The jury returned guilty verdicts on all charges. *Id.* at R. 52-53. Petitioner was sentenced to serve a term of seventy-two (72) months on the possession of cocaine charge (Count I), and to time served on the remaining counts. *Id.* at R. 54-59.

Represented by two special assistant public defenders, Petitioner pursued a direct appeal on the following grounds:

1. The trial court improperly failed to conduct a *Nelson* inquiry and improperly conducted a *Faretta* inquiry forcing the [Petitioner] to trial representing himself *pro se*; and

2. The trial court erred in failing to grant [Petitioner's] motion for judgment of acquittal for possession of cocaine with intent to sell.

Dkt. 7, Ex. 1. On June 14, 2002, the state district court entered a per curiam decision affirming Petitioner's convictions and sentences without unwritten opinion (Dkt. 7, Ex. 3). *See Braxton v. State*, 823 So. 2d 773 (Fla. 2d DCA 2002) (table decision). The mandate issued on July 29, 2002 (Dkt. 7, Ex. 4).

On September 27, 2002, Petitioner filed a motion to reduce or modify his sentence pursuant to Fla. R. Crim. P. 3.800(c) (Dkt. 7, Ex. 5). The motion was denied by the trial court on October 16, 2002 (Dkt. 7, Ex. 6).

On October 9, 2002, Petitioner filed a state petition for writ of habeas corpus asserting that he was denied effective assistance of counsel on direct appeal. He faulted appellate counsel for failing to raise the following issues: (1) double jeopardy prevented the second verdict once [Petitioner] had been acquitted on the higher crime charged; (2) the trial court erred by forcing [Petitioner] to choose between two absolute constitutional rights;

---

[3]*See McKaskle v. Wiggins*, 465 U.S. 168 (1984) (There is no constitutional deprivation by appointment of standby counsel even over the objection of the defendant) (citing *Faretta*, 422 U.S. at 834).

and (3) the trial court erred by not binding the State to its burden upon challenge to [Petitioner's] prior criminal record (Dkt. 7, Ex. 7). Having the benefit of the State's response in opposition to the petition, on May 28, 2003, the state district court of appeals denied the petition without discussion (Dkt. 7, Ex. 9). *See Braxton v. State*, Case No. 2D02-4467 (Fla. 2d DCA 2003) (table decision). Petitioner's motion for clarification was denied on June 26, 2003 (Dkt. 7, Ex. 10).

In the instant petition for federal habeas relief, Petitioner raises as grounds for relief the three substantive claims of trial court error he faulted appellate counsel for failing to raise on direct appeal, as set forth above (Dkt. 1).[4] Respondent acknowledges that the petition is timely, but asserts that the claims are procedurally barred under 28 U.S.C. § 2254(b).

**Standard of Review**

A federal habeas petitioner must present his claims to the state courts before raising them in federal court. "[E]xhaustion of state remedies requires that petitioners 'fairly presen[t]' federal claims to the state courts in order to give the State the 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)). *Accord*, *Rose v. Lundy*, 455 U.S. 509, 518-19 (1982) ("A rigorously enforced total exhaustion rule will encourage state prisoners to seek full relief first from the state courts, thus giving those courts the first opportunity to review all claims of constitutional error."), and *Upshaw v. Singletary*, 70 F.3d 576, 578 (11th Cir. 1995) ("[T]he applicant must have fairly apprised

---

[4] Petitioner does not raise a claim of ineffective assistance of appellate counsel.

the highest court of his state with the appropriate jurisdiction of the federal rights which allegedly were violated.").

The failure of a federal habeas petitioner to adhere to state procedural rules will bar federal review of those claims in a subsequent federal habeas corpus proceeding. *See Wainwright v. Sykes*, 433 U.S. 72 (1977); *Sims v. Singletary,* 155 F.3d 1297, 1311 (11th Cir. 1998). The federal habeas court must defer to the state court's interpretation of its procedural rules, and must enforce those rules as well as enforcing the procedural rulings of the state courts. *See Lindsey v. Smith*, 820 F.2d 1137 (11th Cir. 1987).

**Discussion**

Since Petitioner's conviction was entered after AEDPA was enacted, his petition is subject to its provisions. In Ground One, Petitioner contends that the trial court erred in allowing the jury to resume deliberations after the verdict was read and the jury foreman advised the trial court that there was a scrivener's error on the verdict form. According to Petitioner, this was a violation of his rights under the Double Jeopardy Clause. In his second claim for relief, Petitioner asserts that the trial court erred by forcing him to choose between his right to a speedy trial and effective assistance of counsel. Finally, in Ground Three, Petitioner contends the trial court erred by not requiring the State to properly establish that the prior convictions used in calculating his points on the sentencing guidelines score sheet were actually his convictions.

Respondent contends that these issues, as presented, are unexhausted and procedurally barred because Petitioner failed to raise them in state court on direct appeal or in a motion for relief under Fla. R. Crim. P. 3.850. Significantly, while the record confirms that Petitioner raised these issues in his petition for state habeas relief, they were

raised in the context of his ineffective assistance of appellate counsel claim rather than trial court error.

The exhaustion of the federal dimension of a habeas claim is a statutory requirement that cannot be waived by this Court. See 28 U.S.C. § 2254(b). Title 28 U.S.C. § 2254(b) requires the exhaustion of all state court remedies before a federal habeas corpus application will be entertained. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). *See also Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir. 2003) ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.") (quoting *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001)). *See also Brown v. Estelle*, 701 F.2d 494, 495 (5th Cir. 1983) ("The exhaustion requirement is not satisfied if a petitioner presents new legal theories or entirely new factual claims in support of the writ before the federal court.").

Nothing in the record suggests that any of the statutory exceptions to the exhaustion requirement are applicable in the present case. *See* 28 U.S.C. § 2254(b)(1)(B). The failure to properly exhaust state court remedies for these claims when remedies were available results in a procedural default of the claims. *O'Sullivan*, 526 U.S. at 847. Under the rules governing post-conviction relief in Florida, Petitioner's claims are procedurally defaulted because any new petition would be barred by multiple procedural rules, including the statute of limitations. *See* Fla. R. Crim. P. 3.850. As state remedies are no longer available, Petitioner must show either "cause and prejudice" or "manifest injustice" to overcome this procedural default. *Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993).

As stated above, Petitioner has not responded to Respondent's assertion that his claims are procedurally barred. To the extent that the petition may be read to assert that

Petitioner's claims of ineffective assistance of counsel claims establish cause for his default, ineffective assistance of counsel may satisfy the cause requirement, *see Murray v. Carrier*, 477 U.S. 478, 485 (1986), however, "attorney error short of ineffective assistance of counsel, . . . does not constitute cause and will not excuse a procedural default." *McCleskey v. Zant*, 499 U.S. 467, 494 (1991). Thus, to satisfy the cause exception to a procedural bar "the claim of ineffective assistance must have merit." *United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000) (citing *Greene v. United States*, 880 F.2d 1299, 1305(11th Cir. 1989)). For reasons set forth *infra*, the Court finds that Petitioner's allegations of ineffective assistance of appellate counsel are not sufficient cause to excuse his procedural default.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-part test for determining whether a convicted person is entitled to habeas relief on the ground that his or her counsel rendered ineffective assistance: 1) whether counsel's representation was deficient, i.e., "fell below an objective standard of reasonableness"; and 2) whether the deficient performance prejudiced the defendant, i.e., there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 687-88. *See also Wiggins v. Smith*, 539 U.S. 510, 534 (2003); *Williams v. Taylor*, 529 U.S. 362 (2000).

A defendant has a right to counsel to aid in the direct appeal of his or her criminal conviction. *See Evitts v. Lucey*, 469 U.S. 387, 396 (1985). This right to counsel is violated when appellate counsel is ineffective. *Id.* at 397; *Alvord v. Wainwright*, 725 F.2d 1282 (11th Cir. 1984). This Circuit has applied the Supreme Court's test for ineffective assistance at trial set out in *Strickland* to guide its analysis of ineffective assistance of appellate counsel

claims. *See Heath v. Jones*, 941 F.2d 1126, 1130 (11th Cir. 1991), *cert. denied*, 502 U.S. 1077 (1992). In order to prevail on such a claim, a petitioner must show that his appellate counsel's performance was deficient and that this performance prejudiced the defense. *Id.*

Counsel does not provide ineffective assistance when frivolous arguments are not raised on appeal. *See Jones v. Barnes*, 463 U.S. 745 (1983); *see also United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992) (attorney not ineffective for failing to argue a meritless issue). The Sixth Amendment does not even require appellate advocates to raise every non-frivolous issue. *Heath*, 941 F.2d at 1131. Instead, effective advocates "winnow out" weaker arguments even though the weaker arguments may be meritorious. *Id.* The exercise of judgment involved in framing an appeal makes it "difficult to demonstrate that [appellate] counsel was incompetent" under *Strickland* for omitting a particular argument. *Smith v. Robbins*, 528 U.S. 259, 285-86 (2000) (citing *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)). *See also Farina v. State*, 937 So. 2d 612, 634 (Fla. 2006).

**Ground One**

In Ground One of his federal habeas petition, Petitioner raises a substantive claim that his double jeopardy rights were violated in state court. In his state habeas petition, Petitioner asserted that appellate counsel was ineffective for failing to raise the claim that the state trial court violated his rights under the Double Jeopardy Clause when it allowed the jury to resume deliberations once he had been "acquitted on the higher crimes charged."[5] Dkt. 11, Ex. 7.

---

[5] This is an inaccurate statement of the record. Initially, the jury found Petitioner guilty on Count I, possession of cocaine with intent to sell or deliver, and Count IV, operating an unregistered vehicle, and not guilty on Count II, driving while license suspended, and Count III, possession of drug paraphernalia) (Dkt. 7, Ex. 11, Vol. 1 at 52-53).

The state court trial transcript reflects that the jury returned to the courtroom with a verdict at 6:43 p.m. When the verdict, finding Petitioner guilty of Counts I and IV but not guilty of Counts II and III was read, the jury foreman stated, "Your Honor, I don't believe that reflects the jury's decision." After reviewing the verdict form, he stated, "I must have checked the wrong lines." The jury returned to the jury room to resume its deliberations and returned to the courtroom three minutes later. Petitioner was found guilty as charged on all four counts. When the jury was polled, all jurors affirmed that the corrected verdict form reflected their verdict (Dkt. 7, Ex. 11, Vol. 2 at Tr. 210-214).

Petitioner's assertion that the trial court violated the Double Jeopardy Clause ("[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb") lacks merit. The Double Jeopardy Clause protects against a second prosecution for the same offense after acquittal or conviction, as well as against multiple punishments for the same offense. *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969), *overruled on other grounds by Alabama v. Smith*, 490 U.S. 794, 800-801 (1989). Petitioner was not subjected to a second prosecution after acquittal or conviction or multiple punishments for the same offense.

In Florida, a clerical error in a verdict can be corrected so long as the jurors have not been "contaminated" by events occurring subsequent to their separation. *See Griffin v. State*, 414 So. 2d 1025, 1029 (Fla. 1982) ("If it appears that a mistake or oversight needs to be corrected, the court may send the jury back for further deliberations") (citation omitted); *Robinson v. MacKenzie*, 508 So. 2d 1285 (Fla. 3d DCA 1987); *Masters v. State*, 344 So. 2d 616 (Fla. 1st DCA 1977). It is likewise well settled in the federal courts that in the case of an inadvertent mistake, the court has the authority, before accepting the verdict

and discharging the jury, to permit the jury to correct the mistake. *Helms v. United States*, 310 F.2d 236 (5th Cir. 1962)[6] (citing *Shiflett v. Welch*, 161 F.2d 933 (4th Cir. 1947); *Bernhardt v. United States*, 169 F.2d 983, 984 (6th Cir. 1948); *Daigle v. United States*, 248 F.2d 608 (D.C. Cir. 1957)). A verdict is not final until the jury's deliberations are completed, the result is announced in open court, and no dissent by a juror is registered. *United States v. Rastelli*, 870 F.2d 822, 834 -835 (2d Cir. 1989) (citing *United States v. Taylor*, 507 F.2d 166, 168 (5th Cir. 1975)); *United States v. Nelson*, 692 F.2d 83, 84-85 (9th Cir. 1982); *United States v. Chinchic*, 655 F.2d 547, 550 (4th Cir. 1981), *cert. denied*, 471 U.S. 1135 (1985); *United States v. Love*, 597 F.2d 81, 85 (6th Cir. 1979).

In Petitioner's case, the trial court had not accepted the verdict before the jury foreman indicated that the verdict form did not accurately reflect the jury's decision. A mere three minutes passed between the time the incorrect verdict was published and the corrected verdict was returned. There is no indication or suggestion of any outside influence on the jury. The record reflects that the initial verdict form contained a clerical error. There was no double jeopardy violation. Appellate counsel was not ineffective for failing to raise this meritless issue. *See United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000).

**Ground Two**

In Ground Two of his federal habeas petition, Petitioner raises the substantive claim that the trial court erred in forcing him to choose between "two absolute constitutional rights," *to wit*, the right to effective assistance of counsel and the right to a speedy trial.

---

[6] Fifth Circuit decisions handed down prior to October 1, 1981, are binding precedent upon this Court. *See Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

This claim has no merit. In his state habeas petition, Petitioner asserted that appellate counsel was ineffective in not arguing this claim. Petitioner complained that by refusing to waive his state speedy trial right, he was forced to represent himself at trial. The record establishes that Petitioner brought this dilemma upon himself by insisting that his *sixth* court appointed attorney be discharged on the day of trial, while at the same time insisting on a speedy trial. Petitioner's attempt to manipulate an orderly state court process did not deprive him of his Sixth Amendment right to effective assistance of counsel.

Petitioner's trial began on March 19, 2001. As discussed, Attorney Fraser was not appointed to represent Petitioner until March 7, 2001. Fraser was the sixth attorney to be appointed to represent Petitioner. Within minutes of the appointment, Petitioner and Fraser had a conflict. Petitioner demanded that Fraser file a demand for a speedy trial.[7] Fraser opposed that course of action because he was not ready for trial. *See* Fla. R. Crim. P. 3.191(g).[8] When Petitioner advised Fraser that he was discharging him, Fraser informed the trial court that he and Petitioner had a conflict.

The record indicates that on the morning of trial the following exchange occurred:

Court: I believe that you have had five different public defenders. You have created conflicts with all of your public defenders. You have not cooperated throughout the entire time that you have been incarcerated on these pending charges. You have not cooperated with their attempts to prepare a defense for you. You have not listened to their

---

[7]On January 16, 2001, Petitioner filed a *pro se* Demand for Speedy Trial. *Id.* at R. 17. Florida courts do not consider documents filed by a defendant *pro se* as properly before the court once counsel has been appointed to represent the defendant. *See Logan v. State*, 846 So. 2d 472, 478-79 (Fla. 2003); *Lee v. State*, 779 So. 2d 341-42 (Fla. 2d DCA 2000) (striking *pro se* notice of pending motion and directing the trial court to strike the pending *pro se* motion). *See also Purnell v. State*, 931 So. 2d 134, 135 (Fla. 2d DCA 2006) (*pro se* motion filed while the defendant was represented by counsel should be stricken as a nullity) (citation omitted)).

[8] Rule 3.191 provides, in pertinent part, that "[a] demand for speedy trial shall be considered a pleading that the accused is available for trial, has diligently investigated the case, and is prepared or will be prepared for trial within 5 days." Fla. R. Crim. P. 3.191(g).

advice. And at least one instance, maybe more, you have filed grievances with the Florida Bar.

The last court appointed attorney with the Public Defenders' Office, you indicate that you were going to file a grievance against her. That you *have had irreconcilable differences. And so the Court declared a* conflict and appointed private attorney Mr. Robert Fraser, who is standing to your right.

As I indicated the last time we were in court, Mr. Fraser is one of the most experienced criminal defense lawyers in this circuit, if not, probably in the central part of the state or the State of Florida as a whole. . . .

Now, I have appointed Mr. Fraser to represent you because you have indicated that you did not want all of those other prior attorneys, that you were demanding your right to a speedy trial and that you were not capable of representing yourself.

And it is a forgone conclusion that you do qualify to have this Court appoint an attorney for you. It was only about after a five-minute discussion between you and Mr. Fraser that Mr Fraser asked to have this case called back before the Court where he informed the Court that it was your desire to discharge him. That you had created another conflict. That you were not cooperating with him.

And when I brought you back before the Court, you also indicated that you wanted to discharge Mr. Fraser.

I believe that I have done everything that I possibly can do to provide you with court-appointed counsel throughout the numbers of different public defenders, as well as appointed Mr. Fraser to represent you. You have the right to discharge Mr. Fraser.

*But you need to make a decision. If you discharge Mr. Fraser, I am not* going to appoint another attorney to represent you. Mr. Fraser will act as standby counsel to assist you throughout the trial.

But you also have the choice of keeping Mr. Fraser as your attorney, listening to his advice, and assisting him in preparing a defense for you. Do you have – what is it that you would like to do, Mr. Braxton?

Do you want Mr. Fraser as your attorney? Would you like to waive your right to a speedy trial and ask the Court for a continuance so that he can help you prepare a defense?

Petitioner: No, I don't want to waive my right for a speedy trial. I just would like to acknowledge a few things to the Court.

Court: Go ahead.

Petitioner: Yesterday me and Robert Fraser had a talk at the county jail and he had told met that he is no longer my attorney, which he is discharged the last time I was in court. And he said that depositions hadn't been taken yet. And this was set to go to jury trial.

Now, he said he don't know who is going to take depositions. And he told me that I was not allowed to be a part of depositions. So I don't know. I don't know who is going to take depositions in my case when he has discharged himself from my case.

Court: No, sir. Let's make this clear. He did not discharge himself from this case. You discharged him.

Petitioner: That's when he didn't want to file the speedy trial motion to reinstate it. That's when I discharged him. But, you now, that's another, you know, issue there about – what I'm trying to say is that depositions hadn't been taken yet. And I don't have an appointed attorney to my case at this time.

Court: Yes, sir. I appointed Mr. Fraser to represent you. And I had appointed all of the previous public defenders to represent you.

You have created a conflict with each and every one of them including, Mr. Fraser. I am not going to let you, in your actions, thwart the judicial system. We have time limits. We have certain rules that we all must abide by. And You're going to be required to abide by them as well.

Now, you have a right to a speedy trial. And apparently you are demanding that right. We are set to go to trial today. You need to make a decision, Mr. Braxton. Do you want Mr. Fraser to represent you or not.

If you decide that you do not want Mr. Fraser to represent you, then I am not going to appoint another attorney to represent you. Mr. Fraser will stand as standby counsel and assist you throughout the trial. . . .

Petitioner: Let me make this clear to the Court. I am not fully equipped to go pro se and I am not comfortable with Mr. Fraser's representation. And according to my Sixth Amendment right, a lawyer shouldn't be forced on me against my will.

And if a lawyer is forced on me against my will, that's making me believe that the law contrives against me. So I'm going to ask that the Court appoint me another attorney, Your Honor. . . . And I have free choice to, you know, be appointed to a court-appointed attorney.

Court: Well, you made a mistake right there, Mr. Braxton. You do not have the choice to pick which lawyer represents you. . . .

Dkt. 7, Ex. 11, Vol. 1 at Tr. 4-10.

Following a *Faretta* inquiry, Petitioner again advised the trial court that he was not going to represent himself. The following exchange occurred:

Court: Okay. Do you understand, sir, that I'm not going to – well, okay. Are you going to allow Mr. Fraser to represent you?

Petitioner: No, I am not, Your Honor.

Court: Okay.

. . . . .

Petitioner: Depositions haven't been taken yet, Your Honor,. How can we go to trial when depositions haven't been taken yet? Robert Fraser was aware of that yesterday that depositions haven't been taken yet.

Court: You're aware – all of your lawyers have discussed with you your defenses, the things that need to be done on your case. They have discussed your right to a speedy trial. You have demanded your right to a speedy trial. We are going to trial today, sir.

*Id.* at Tr. 14-18.

Petitioner: Your Honor, I wouldn't mind going out and hiring me an attorney if I am afforded that opportunity to go out and get employed. I don't have a problem with that, Your Honor.

But I just refuse to go to trial with Robert Fraser. Because I have asked Robert Fraser the very first day that he was appointed to my case to file the – reinstate the speedy trial motion. And he just right out and told me no, Your Honor.

Court: Let me tell you what you are saying, Mr. Braxton. You don't want to waive your right to a speedy trial. So if we don't take you to trial today, the charges get dismissed.

> But you don't want to go by yourself and you won't accept the lawyers that the Court has appointed for you.

*Id.* at 25-26.

Petitioner proceeded to trial *pro se* with Attorney Gonzalez appointed as standby counsel.

The Florida Constitution provides, in pertinent part, that "[i]n all criminal prosecutions the accused shall, upon demand, . . . have the right to . . . have a speedy and public trial." Fla. Const. Art. 1, § 16. As the Florida Supreme Court noted in *Bulgin v. State*, "the [United States Supreme] Court has held that it is the individual states' responsibility to provide an accused with clear parameters to assure the protection of the right to a speedy trial." 912 So. 2d 307, 309 (Fla. 2005) (citing *Barker v. Wingo*, 407 U.S. 514, 523 (1972), and *Klopfer v. North Carolina*, 386 U.S. 213, 225-26 (1967)). The rule promulgated to protect criminal defendants' speedy trial right in Florida courts provides, in pertinent part: "Except as otherwise provided by this rule, and subject to the limitations imposed under subdivisions (e) and (f), every person charged with a crime shall be brought to trial within 90 days of arrest if the crime charged is a misdemeanor, or within 175 days of arrest if the crime charged is a felony." Fla. R. Crim. P. 3.191(a). Pursuant to Rule 3.191(p), a defendant, after the expiration of the prescribed time, may file a "notice of expiration of speedy trial time" and, with some exceptions not applicable here, must be brought to trial within 15 days or "forever discharged from the crime."

Florida's speedy trial rule "provides the procedures through which the constitutional right to a speedy trial is enforced," and as such is a procedural device only. *See R.J.A. v. Foster*, 603 So. 2d 1167, 1170 (Fla. 1992). Thus, "deprivation of the right to speedy trial does not *per se* prejudice the accused's ability to defend himself. . . . [T]he right to speedy trial is a more vague concept than other procedural rights." *Id.* at 1172 (quoting *Barker v.*

*Wingo,* 407 U.S. at 521). In Florida, the right to a speedy trial depends upon the circumstances, and while it secures rights to a defendant, it should not preclude the rights of public justice. *State v. Lott*, 286 So. 2d 565, 567 (Fla. 1973) (citing *Beavers v. Haubert*, 198 U.S. 77, 87 (1905)). In Florida, while the State generally has the responsibility to bring a timely prosecution, there are exceptions, where, for example, a defendant affirmatively frustrates the State's ability to go to trial. *Bulgin v. State*, 912 So. 2d at 312 (citing *Barker v. Wingo*, 407 U.S. at 522 (inquiry into a speedy trial claim necessitates a "functional analysis of the right in the particular context of the case.")).

Given Petitioner's insistence on his right to a speedy trial and his refusal to accept representation by Attorney Fraser, the state trial court's action did not deprive Petitioner of his Sixth Amendment right to effective assistance of counsel by requiring Petitioner to proceed to trial with stand by counsel. As noted, and as confirmed by the record, Fraser was the sixth attorney appointed to represent Petitioner. Petitioner, having frustrated the attempts of the trial court to afford him representation for more than seven months, demanded a speedy trial. Petitioner's insistence on a speedy trial, his discharge of Attorney Fraser, and his complaints that he was "not fully equipped to go *pro se*" amounted to a calculated attempt to manipulate his orderly prosecution. He strategically placed the state trial court in a proverbial "Hobson's choice" of either risking a dismissal under Rule 3.191(p) or providing Petitioner with a speedy trial, with either an attorney Petitioner did not want or requiring Petitioner to proceed *pro se.* Petitioner's own actions created this extreme circumstance.

As the United States Supreme Court has recognized, in the extreme case where a criminal defendant is, in essence, frustrating and manipulating the proceedings, it is appropriate for the trial court to take remedial action. *Illinois v. Allen*, 397 U.S. 337 (1970)

(Brennan, J., concurring) ("[T]he governmental prerogative to proceed with a trial may not be defeated by conduct of the accused that prevents the trial from going forward."). *See also Knight v. State*, 923 So. 2d 387, 416 (2005); *Jones v. State*, 449 So. 2d at 261. Likewise, it has been recognized that the freedom to have counsel of one's own choice may not, however, be used for purposes of delay. *United States v. Silva*, 611 F.2d 78, 79 (5th Cir. 1980) (citing *United States v. Uptain*, 531 F.2d 1281, 1290 (5th Cir. 1976)). As the Fifth Circuit cautioned in *Bowman v. United States*, "[j]udges must be vigilant that requests for appointment of a new attorney on the eve of trial should not become a vehicle for achieving delay." 409 F.2d 225, 226-27 (5th Cir. 1969) (quoting *United States v. Llanes*, 374 F.2d 712, 717 (2d Cir. 1967) ("[T]he right to counsel cannot be . . . manipulated so as to obstruct the orderly procedure in the courts or to interfere with the fair administration of justice.")). Moreover, errors invited by a defendant are not a basis for relief from a criminal conviction.[9]

Given Petitioner's insistence on a "speedy" trial and the timing of his request for yet another attorney suggest that Petitioner may well have been motivated by obtaining a delay of the inevitable, a trial. If Petitioner's true motive was to obtain a speedy trial, he cannot now be heard to complain that his objective was frustrated by the circumstances he created for himself.

In *Jones v. State*, the Florida Supreme Court held that the trial court's refusal to grant a motion for appointment of counsel was proper, finding that the defendant waived his right to appointed counsel by demanding counsel of his choice. 449 So. 2d 253, 258

---

[9] Under Florida law, "[a] party may not invite error and then be heard to complain of that error on appeal." *Cox v. State*, 819 So. 2d 705, 715 (Fla. 2002) (quoting *Pope v. State*, 441 So. 2d 1073, 1076 (Fla. 1983). The invited error doctrine is also applied in federal courts. *See United States v. Harris*, 443 F.3d 822, 823-24 (11th Cir. 2006) ("The doctrine of invited error is implicated when a party induces or invites the district court into making an error," and where a party invites error, the court is precluded from reviewing that error (quotations and citations omitted).

(Fla. 1984) ("[D]efendants who without good cause refuse appointed counsel but do not provide their own counsel are assumed to be exercising their right to self-representation. They should be so advised and the trial court should forthwith proceed to a *Faretta* inquiry"). Noting that both the State and the defendant are entitled to orderly and timely proceedings, the *Jones* court found that the right to appointed counsel is not a license to abuse the dignity of the court or frustrate orderly proceedings. *Id.* at 257.

In this case, the trial court conducted an appropriate inquiry to satisfy itself that Petitioner was competent to represent himself, while making it explicitly clear that it thought Petitioner was making a mistake in refusing to accept Attorney Fraser as counsel. *See Faretta v. California*, 422 U.S. at 835. The record confirms that Petitioner was conversant with the issues and understood the explanations of the trial court. Notwithstanding having been advised that new counsel would not be appointed to represent him, Petitioner insisted that Attorney Fraser be discharged. Petitioner was made aware of the dangers and disadvantages of self-representation. Notwithstanding, he insisted that an experienced criminal defense lawyer, only recently appointed, be discharged rather than consent to a continuance to enable that attorney to prepare for trial. His decision to proceed *pro se* rather than waive his right to a speedy trial was nothing short of a knowing and voluntary decision brought on by his own conduct. As to Petitioner's statements that he was not "fully equipped" to represent himself, suffice it to say that Petitioner knowingly brought this dilemma on himself. The appointment of standby counsel under these circumstances was consistent with the procedure recommended in *Faretta.*

Constitutional rights are not absolute. In discussing the tension between the *constitutional right to remain silent and the right to testify in McGautha v. California,* the Supreme Court recognized that:

> The criminal process, like the rest of the legal system, is replete with situations requiring "the making of difficult judgments" as to which course to follow. Although a defendant may have a right, even of constitutional dimensions, to follow whichever course he chooses, the Constitution does not by that token always forbid requiring him to choose. The threshold question is whether compelling the election impairs to an appreciable extent any of the policies behind the rights involved.

402 U.S. 183, 212-13 (1971) (citation omitted), *vacated in part, on other grounds*, *Crampton v. Ohio*, 408 U.S. 941 (1972).

Under the unusual circumstances of this case, the state court cannot be said to have "compelled" Petitioner to choose between a speedy trial and the effective assistance of counsel. Petitioner was not entitled to another court appointed attorney. Nor was he entitled, as he requested, to be released to earn money to retain a private attorney. He was represented by an experienced criminal defense attorney who had not been able to prepare for trial and who was understandably not willing to demand a speedy trial under those circumstances. By his actions, Petitioner waived his right to be represented by effective counsel. His Sixth Amendment claim accordingly lacks merit. It follows that his appellate counsel was not ineffective in failing to raise it. *See Jones v. Barnes*, 463 U.S. at 754; *Rutherford v. Moore*, 774 So. 2d 637, 643 (Fla. 2000).

**Ground Three**

In Ground Three of the instant federal petition, Petitioner raises the substantive claim that the state trial court erred "by not binding the State to it's [sic] burden upon challenge of prior history." This claim has no merit. In his state habeas petition, Petitioner argued that appellate counsel was ineffective for failing to challenge the scoring of prior convictions on the guidelines score sheet. Petitioner contended that he challenged the scoring of his prior convictions at sentencing and the trial court erred in failing to require the State to produce copies of his prior convictions.

The state court sentencing transcript reflects the following exchange between Petitioner and the state court sentencing judge:

Court: Okay. Anything else you want to say before I sentence you, Mr. Braxton?

Petitioner: Go ahead. Go ahead and give me the time, Your Honor.

Court: Anything you want to say?

Petitioner: No, sir.

Court: What says the State?

State: Judge, this defendant has had prior felonies. His history begins in 1990. He's violated several times on his other cases. And he's had a prior possession of cocaine as well as a prior grand theft motor vehicle.

He was on probation for uttering a forged instrument as well as grand theft. While on probation he committed these new charges.

He is scoring the bottom of the guidelines 23 months Florida State Prison. The State does believe that 72 months Florida State Prison would be an appropriate sentence in this case based on his prior history.

Court: Anything else?

Petitioner: May I see the score sheet, please? Would you provide me with a copy of the score sheet, please? I'm going to ask the State, is this the score sheet that you're presenting to the defendant?

State: It is one – the other score sheet previously presented to you reflected another charge, agg [sic] assault. That has not been dealt with yet. I've corrected it and now it reflects the appropriate charge.

Petitioner: Are you proving – are you proving historical facts here, ma'am, pertaining to this score sheet?

State: I have copies of –

Petitioner: Prior history facts?

State: Your Honor, I do have copies of prior felony conviction [sic].

Petitioner: Is this what I have here, State? Do I have priors here with my name indicating that these priors belong to me, ma'am?

State: Yes, you do.

Petitioner: How are you proving this score sheet, these guideline here, by making this sentence here today in this courtroom?

Court: What did you say, Mr. Braxton?

Petitioner: I am asking the State – I am not aware of the fact how she is proving the score sheet to me.

Court: Well, the only thing the score sheet does, Mr. Braxton, is show a bottom of the guidelines. You are going to be sentenced pursuant to the criminal punishment code. So I could sentence you up to a maximum of 15 years in the Florida State Prison.

Petitioner: Is she saying these --

Court: She is saying those are your prior offenses.

Petitioner: Right. She's saying these are prior offenses? Let me say this, sir, please. I have this Rule 3.992. This is for the record, please. I just want to check the record out. This is for the record.

Rule 3.992, Criminal Punishment Code Score Sheet. This is what I have in my hand at this point in time. Is that correct, ma'am?

Court: You have got a score sheet in your hand.

Petitioner: Right. Rule 3.992. Is that correct, Your Honor?

Court: You reading off of that score sheet?

Petitioner: Can you show the judge that?

Court: I don't need to see it. I signed a copy right here, sir.

Petitioner: You have 3.992? Is that correct? Okay. Your honor, okay. You can go ahead and proceed on.

Court: Sentence him to 72 months in the Florida State Prison on Count I. Time served on Count 2. Time served on Count 3. And time served on Count 4.

Dkt. 7, Ex. 11, Vol. II at Tr. 220-24.

This Court concludes that Petitioner's comments during the sentencing hearing were ambiguous, at best. Petitioner did not challenge the existence or extent of the prior

convictions and any objection he may have had to that portion of the sentencing guidelines score sheet appears to have been withdrawn when he advised the trial court that he was prepared to go forward with sentencing:

> Petitioner: You have 3.992? Is that correct? Okay. Your honor, okay. You can go ahead and proceed on.

To the extent that Petitioner's comments may, *arguendo*, be read to challenge the existence of his prior convictions, under Florida law, when a defendant disputes the extent of his prior record at sentencing, the State must present corroboration of any hearsay statements in the presentence investigation. *See DiSavoia v. State,* 522 So. 2d 84 (Fla. 2d DCA 1988). Twice, the prosecutor advised the trial court that she was in possession of copies of Petitioner's prior convictions. Given the ambiguity of Petitioner's comments during sentencing and the prosecutor's assurances that she had the copies with her, there is no merit to this substantive claim and Petitioner's appellate counsel's failure to raise this issue on direct appeal was not unreasonable under prevailing professional norms. *Strickland*, 466 U.S. at 689. *See also Smith v. Robbins*, 528 U.S. 259 (2000).

**Conclusion**

Having determined that Petitioner's assertions of ineffective assistance of appellate counsel lack merit, the Court concludes that Petitioner has not established cause to excuse his default in state court or shown that a fundamental miscarriage of justice will occur if this Court does not reach the merits of his claims. *See Murray v. Carrier*, 477 U.S. 478, 496 (1986).

As the Eleventh Circuit observed in *Hill v. Jones*, "[a] petitioner is not entitled to a hearing on the threshold issues of cause and prejudice or manifest injustice without first proffering specific facts which support a finding that one of these exceptions to the procedural default rule exists." 81 F.3d 1015 (11th Cir. 1996). Without such a showing,

a federal habeas court should not discuss the merits of a claim that has been procedurally defaulted in state court. *Kight v. Singletary*, 50 F.3d 1539, 1543 (11th Cir. 1995).

ACCORDINGLY, the Court **ORDERS** that:

1. The Petition for Writ of Habeas Corpus is **DENIED** (Dkt. 1).

2. The **Clerk** shall enter judgment against Petitioner, terminate all pending motions, and close this case.

**DONE AND ORDERED** in Tampa, Florida, this 29th day of March, 2007.

JAMES D. WHITTEMORE
United States District Judge

Copies to:
Petitioner *pro se*
Counsel of Record